Harlan F. LESTER, Appellant,

v.

ÆTNA CASUALTY & SURETY COM-
PANY, Appellee.

No. 16154.

United States Court of Appeals
Fifth Circuit.

Jan. 25, 1957.

Rehearing Denied March 1, 1957.

Thomas M. Comegys, Jr., Shreveport,
La., for appellant.

Richard H. Switzer, Shreveport, La.,
Lunn, Irion, Switzer, Trichel & Johnson,
Shreveport, La., of counsel, for appellee.

Before HUTCHESON, Chief Judge,
and HOLMES and BORAH, Circuit
Judges.

HUTCHESON, Chief Judge.

Brought against defendant-appellee as
the insurer of Dr. Edith W. Rigsby, a
physician specializing in the practice of
psychiatry, the suit was for malpractice
and for the damage alleged to have re-
sulted therefrom.

After a lengthy trial at which many
witnesses testified, the cause was sub-
mitted to a jury upon a full and compre-
hensive general charge to which plaintiff
took only three exceptions.[1]

1. These are: (1) "I except to that part of
the charge relating to consent and in
which the court has said the jury may
find that the full disclosure of the wife
may stand in lieu of disclosure to the hus-

band. The basis of my ground of objec-
tion is that it is unconstitutional in that
it deprives the plaintiff of due process of
law in that it deprives him of his liberty
and freedom of contract and it violates

There was a verdict and judgment for defendant, and plaintiff has appealed. Filing a statement of points[2] under Rule 75(d) Fed.Rules Civ.Proc., limiting the appeal to a single question thus stated in his brief:

"Under the law of Louisiana, considered in the light of the provisions of that state's constitution and of the parallel provisions of the Federal Constitution, can an adult human being be deprived of his full freedom to contract and therefore of his liberty without due process of law?" he filed a correspondingly limited designation of contents of the record on appeal.[3]

the 14th Amendment of the United States Constitution and Article 1, Section 2 of the Constitution of Louisiana [LSA]."

(2) "With respect to the use of X-rays by psychiatrists, I object to the court's charge with respect to the use of X-rays for determining injury as limiting it to the practice of psychiatrists rather than to the practice of physicians and surgeons in general, or physicians specializing in injuries to the bones."

(3) "I object to the failure of the court to give instructions Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13, as requested by plaintiffs."

2. "(1) The court erred in instructing the jury on the question of consent by plaintiff to submit to the treatment administered by defendants' assured.

"(2) The court erred in instructing the jury that: 'While it is basic in Anglo-American law that in the ordinary situation the patient in control of his mental faculties himself must be fully advised and must give his consent to any operation or other medical procedure which might produce harmful results, if you find from a preponderance of the evidence that it is a commonly accepted, proper and preferable practice among qualified psychiatrists practicing in this or other similar localities, not to disclose the possibilities to the patient, and that it is in the best interest of the patient that the matter be handled in such fashion, and if you further find that such a practice is reasonable generally and was reasonable in this case, and that an adequate explanation of the possible harmful results was given to plaintiff's wife, who consented for him, then you may not find for plaintiff on the grounds that there was no valid consent given to the administration of the shock treatments by Dr. Rigsby, and your verdict should be for defendant, unless liability otherwise is established.' "

"(3) Under the courts charge to the jury on the question of consent, the jury was free to find as a matter of law. that plaintiff could be deprived of his liberty (to contract—to consent to or refuse the proposed treatment actually rendered) without due process of law by a physician engaged in private practice, provided plaintiff's spouse consented to or joined in such deprivation which charge was erroneous and prejudicial, and constitutes an invasion of plaintiff's rights under the 5th and 14th Amendments to the Constitution of the United States and under Article I, Section 2 of the Constitution of the State of Louisiana."

"(4) The court erred in refusing to give the instructions requested by plaintiff numbered VI; VII–A.B.C. and D.; VIII; IX; XI; XII."

These, as appellant states in his brief at page 41, "simply ask the court to charge the jury:

" '(1) That every adult human being of sound mind has a right to determine what shall be done with respect to his own body. (Requested charge No. XII.)'

" '(2) That every adult is presumed to be sane and capable of contracting for himself. (Requested charge No. VII–A.)'

" '(3) That the burden of overcoming this presumption and of proving incapacity rests upon the person asserting it. (Requested charge No. VII–B.)'

" '(4) That even if plaintiff was incompetent (by reason of insanity or otherwise) his wife could not contract for him, in the absence first of interdiction, and second, appointment and qualification as curatrix. (Requested charge No. VII–D.)'

" '(5) That in order to perform a dangerous operation upon a patient the doctor must have the patient's consent. (Requested charge No. VIII.)'

" '(6) And that consent means informed and understanding consent, free of misrepresentation or concealment. (Charges No. VI, VIII, IX, XI, and XII.)' "

3. This consisted of the pleadings, the court's instructions to the jury, all plaintiff's objections to the court's charge to the jury on the question of consent, plaintiff's requested and refused instructions on the same issue, the verdict and judgment, the motion for a new trial and the order and opinion denying same.

The defendant, in its turn, designated the entire remaining record not designated by plaintiff, including more than 1200 pages of testimony.

Here, confining himself to the points designated and insisting that "the charge of the court on the question of consent is erroneous and prejudicial as matter of law, under any conceivable circumstances or set of facts", and "the evidence in the case is utterly unrelated to the question of law raised by plaintiff's objections to the charge of the court on the question of consent or to the court's failure to charge on that question as urged by plaintiff in his requested charges". Appellant urges upon us that the giving of the instruction objected to and the refusal of the instructions requested was patent errors requiring a reversal.

In further emphasis of this insistence, appellant, stating in his brief that, for the reasons above stated, "we have deliberately foregone the very tempting luxury of quoting from or even referring to the evidence in this case," and moving under Rule 75(e) Fed.Rules Civ. Proc. to impose upon defendant-appellee the costs of including in the record unessential matter, urges upon us that under the statement of points made, and relied upon by him, on the appeal, neither the evidence nor any part of the record is necessary to a proper determination of the question of law propounded by him other than the portion of the record which he designated.

Appellee, citing and strongly relying on Hall v. United States, D.C., 136 F. Supp. 187, a malpractice case, affirmed Per Curiam, 5 Cir., 334 F.2d 811, insists that its designation of the whole of the evidence and the record was reasonable and proper in order to show to this court that the facts in this case are the same as, or comparable to the facts in the Hall case, and that the action of the court in giving and refusing the charges complained of here was in accord with the action of the trial court before which the Hall case was tried without a jury.

In view of appellant's claim that the action he complains of was erroneous "under any conceivable circumstances or set of facts and the evidence in the case is utterly unrelated to the question of law" he raises, that, in short, for the purpose of this appeal this court may, indeed must, assume the existence of facts most unfavorable to plaintiff, we agree with its contention that defendant's designation in this case was a manifest violation of the invoked rule. Appellant's motion to tax against appellee the whole cost of compiling the record, except the portion designated by plaintiff, is therefore granted.

This is so because, under his statement of points and his designation of contents of record[4] on appeal, the only matter appellant has brought here for our review is his claim that under any conceivable state of facts or circumstances most unfavorable to him, which of course would include an assumed state as unfavorable as, or more unfavorable than, that actually shown by the evidence, the complained of action of the court, in giving the charges objected to, and in refusing those requested, on the issue of consent was prejudicial error.

As appellant correctly points out in his brief, his specifications of error upon the refusal of requested instructions are not intended to add to or enlarge upon his primary specifications 1, 2, and 3, dealing with the complained of error in the general charge. They are put forward to point up and emphasize by their particularization the error generally relied on, and it will not be necessary for us to, we will not, deal separately with them. It will be sufficient to say of them that the determination in favor of, or against, appellant of his primary grounds of error necessarily determined against him these subordinate and illustrative grounds.

4. Rule 75(a) (d) and (e), F.R.C.P., 28 U.S.C.; Bennett v. Scofield, 5 Cir., 170 F.2d 887; Foremost Dairies v. Ivy, 5 Cir., 204 F.2d 186; Peresipka v. Elgin, 7 Cir., 217 F.2d 182.

Coming then to a consideration of appellant's claim of error on the record brought up by him in support, we are constrained to hold, for the reasons hereafter briefly stated, that no showing of prejudicial error is made and that the judgment must be affirmed.

Assuming, as we must in support of the verdict and judgment, that plaintiff's condition was such as to require neuro-psychiatric treatment and, in the judgment of his physician and his wife, to make it unsafe and unwise to require him to undergo the strain and shock of discussing and considering the possible, though not probable, hazards involved in, and making a decision as to, whether in view thereof the electro-convulsive or electro-shock treatments prescribed for, should be administered to, him; that, in the judgment of his physician and his family it was desirable, indeed necessary that they be administered; and that his wife, being advised of and fully comprehending the situation, added to his consent already given her consent to the administration of the treatments, we are bound to hold that if further consent than that already given by plaintiff to their administration was needed, the wife could and did give sufficient legal consent, and that giving the complained of charge and refusing the requested charges was not prejudicial error. Any other conclusion would, we think, be contrary not only to human experience and sound reason but to the teachings of our case of Wall v. Brim, 5 Cir., 138 F.2d 478 and the cases cited in it.

Appellant, himself recognizing the place, the responsibility, and the authority of a man's wife in familial situations of this kind, pleaded that complainant's injuries were the result of the negligence and want of proper skill and care on the part of the insured " * * * and (d) *in failing to advise plaintiff's wife of the radical and dangerous nature of the prescribed treatment and in administering same without so advising her*" and the court in its charge, without specific objections thereto or complaint thereof by plaintiff, stated the pleadings as thus charging, and submitted to the jury whether in fact plaintiff's wife had been so informed and had consented. (Emphasis supplied.)

The basic, the fundamental, difficulty which confronts plaintiff on this appeal is that he presents his case as though it were one of a person being deprived by another of due process of law, instead of grounding it upon the well settled principles that a physician must, except in real and serious emergencies, acquaint the patient or, when the circumstances require it, some one properly acting for him, of the diagnosis and the treatment proposed, and obtain consent, thereto express or implied, and, consent obtained must proceed in accordance with proper reasonable medical standards and in the exercise of due care. Instead, in short, of dealing with the case in the light of the facts as they are and must be assumed to be: that the plaintiff went to the psychiatrist upon the advice and directions of his own personal physician, and, having solicited her medical skill and aid, was advised that the diagnosis indicated the use of electro-shock therapy or shock treatments; and that, without objection or question, he assented thereto; appellant argues the matter as though the treatments had been administered to him without his knowledge and consent legally and properly given by him or his wife for him. Barfield v. South Highland, 191 Ala. 553, 68 So. 30.

Appellant cites no case from any court in support of his position. We have found none. It has been, we think, correctly said, "Law is nothing else than reason". We think it clear in the light of reason that, under the verdict of the jury, though the result of the treatments is regretted by all, there has been no violation or breach of contract, no assault or battery, no negligence, no breach of obligation, but only a lamentable and unfortunate accident, an accident, accord-

ing to the verdict of the jury, not the result of the failure of defendant's insured to exercise skill, prudence, good judgment and proper care or to proceed in any manner contrary to law.

The judgment is affirmed.