456 P.2d 863

Morgan T. MORRIS, Jr., Plaintiff-
Appellee,

v.

B. F. ROGERS, Defendant-Appellant.

No. 8774.

Supreme Court of New Mexico.

July 7, 1969.

Iden & Johnson, Richard G. Cooper, Albuquerque, for appellant.

John Hogan Stewart, Gallagher & Ruud, Albuquerque, for appellee.

## OPINION

WOOD, Judge, Court of Appeals.

Defendant's appeal attacks the damage award in this personal injury litigation. The issues are (1) aggravation of a pre-existing condition, (2) permanent injury and (3), medical bills.

*Aggravation of a pre-existing condition.*

The litigation resulted from an accident involving two pick-up trucks. Prior to the accident plaintiff had experienced five cervical injuries. Four cervical vertebral interspaces had been fused—C3–4, C4–5, C5–6 and C6–7. Of the four, we are concerned only with C6–7. There was a nonunion of the fusion at this level. Cervical level C2–3 had not been treated prior to the accident. However, the only medical witness (plaintiff's treating physician) was of the opinion: (a) that the C2–3 level had "some degree" of trauma as a result of the prior injuries and (b) that there was "* * * some deterioration in progress. * * *" at this level.

After the accident, the doctor fused the C2–3 level and re-fused the C6–7 level. He was of the opinion that the accident was the cause of the condition that required surgery at these two levels. See Woods v. Brumlop, 71 N.M. 221, 377 P.2d 520 (1962); compare Martin v. Darwin, 77 N.M. 200, 420 P.2d 782 (1966).

Defendant contends the trial court awarded damages for aggravation of the pre-existing condition at C2–3 and C6–7. We agree that the finding of damages was, in part, based on aggravation of the pre-existing condition. In testifying as to these levels, the doctor referred to "* * * injuries that recurred by aggravation. * * *"

When asked to state the extent of the aggravation, the doctor said: "I can't specifically state how much. * * *" The doctor agreed that the condition resulting in surgery at the two levels could have occurred without the accident; that he could not put a date on the injury from his clinical findings alone. His opinion that the accident was the producing cause of the injury was based on the history received from the patient.

On the basis of this testimony, defendant contends the extent of the aggravation was not established with reasonable certainty. Because of this asserted failure of proof, he claims the finding of damages is erroneous. Absent such proof, he claims the damage award is based on a mistake of law.

▆▆▆ Defendant is only liable for the injuries he inflicted on plaintiff. Where the injury is an aggravation of a pre-existing condition, plaintiff must prove the ex-

tent of the aggravation because the aggravation is the injury that has been inflicted. Martin v. Darwin, supra. Further, the extent of the aggravation must be established with reasonable certainty. See Woods v. Brumlop, supra. Although the injury (the aggravation) must be reasonably certain, "Uncertainty as to the amount of damages one may be entitled to receive will not prevent a recovery, * * *." Hebenstreit v. Atchison, Topeka & Sante Fe Ry., 65 N.M. 301, 336 P.2d 1057 (1959).

 The extent of the aggravation can be established by testimony that the pre-existing condition has been aggravated by a stated percentage amount. Compare Maisel v. Wholesome Dairy, Inc., 79 N.M. 310, 442 P.2d 800 (Ct.App.1968). This, however, is not the only way the extent of the aggravation can be proved. Comparative testimony can be used to establish the extent of the aggravation. Martin v. Darwin, supra.

While the extent of the aggravation in this case is not stated as a percentage extent, there is comparative testimony showing the extent of the aggravation.

Plaintiff " * * * was unable to flex or extend the cervical spine so far as he had been able to prior to this accident. * * *"

Prior to the accident the doctor had not recommended further surgery, but had told plaintiff that if his pain persisted, and was intolerable, surgery might be necessary. On plaintiff's last visit to the doctor, approximately five weeks before the accident, the acute pain had disappeared although plaintiff continued to have radiating pain from the C6–7 non-union. After the accident "* * * gradually the pain in his neck got more severe. * * *" Fusion of the C2–3 and C6–7 levels was "* * * necessary to interrupt the patient's discomfort."

The pre-existing non-union at C6–7 was a non-union of the bone. There was a "fibrous union." This type of union is "quite workable" and allows a person to get by "reasonably well" if the heavier type of labor is avoided. The doctor testified that plaintiff could do heavy lifting prior to the accident; that he could do " * * *· what ever lifting that he wanted to engage in.' * * *" Plaintiff had been released to "practically unlimited activities." He had a job demonstrating arc welders. Apart from the necessity of moving 150 pound machines, from time to time, the job was light work. Plaintiff experienced no pain as a result of this work. After the accident, plaintiff's symptoms (pain, severe headaches) progressively increased until he was unable to do work of any type.

 The extent of the injury inflicted by defendant (the aggravation) is established by the foregoing comparative testimony. It is: a decrease of flexion and extension of the cervical spine and an increase in the severity of neck pain which resulted in an inability to work and which necessitated surgery.

*Permanent injury.*

The trial court found that plaintiff suffered permanent injury as a result of defendant's negligence. This finding is error, it is not supported by substantial evidence. Herrell v. Piner, 78 N.M. 664, 437 P.2d 125 (1968).

Our views are: (a) the fusion, in itself, does not establish a permanent injury, (b) the evidence does not establish that plaintiff's condition at trial was a result of the accident and (c) while the evidence shows that plaintiff suffered injuries as a result of the accident, the evidence does not show that these injuries were permanent. In reaching these views we have considered all the evidence, medical and non-medical. Accordingly, we do not reach the contention as to the type of evidence required to show a permanent injury.

a. The fusion, in itself, does not establish a permanent injury.

Plaintiff suffered pain at C2–3 and C6–7 as a result of the accident. The doctor testified that surgery was necessary to interrupt that pain.

There was also a "good fusion" at C2–3. This C2–3 fusion was a permanent fixation; a permanent condition. See 1A Gordy-Gray, Attorneys' Textbook of Medicine (3rd ed.) para. 13.08, at 13–22 (1968). This permanent condition, however, does not establish a permanent injury; there must be more. Proof of "permanent injury" means proof of "permanent disability" or "permanent damage." Garcia v. Southern Pacific Co., 79 N.M. 269, 442 P. 2d 581 (1968).

Lawyers' Medical Encyclopedia, §§ 7.20 and 7.38 (Rev.Vol. 1, 1966) indicates some permanent impairment results from a fusion. However, 1A Gordy-Gray, Attorneys' Textbook of Medicine (3rd ed.) para. 13.09, at 13–27 (1968) and 1A Gordy-Gray, Attorneys' Textbook of Medicine (3rd ed.) para. 10A.40, at 10A–17 (1961) indicates there may be no residual disability. With this variance, we cannot hold there is either permanent disability or permanent damage solely on the basis that a fusion has been performed.

b. The evidence does not establish that plaintiff's condition at trial was a result of the accident.

The doctor was not asked whether plaintiff suffered any permanent disability or permanent damage as a result of the injuries at C2–3 and C6–7 or as a result of the surgery at those two levels. The doctor was not asked whether plaintiff's condition at trial resulted from the accident.

We have previously referred to the doctor's testimony concerning plaintiff's ability to lift and to engage in "practically unlimited activities" prior to the accident. At the trial the doctor testified that plaintiff was incapable of performing manual labor, that he should not " * * * do heavy labor, lifting, or movement of his arms above shoulder height." The elapsed time from accident to trial is approximately two years and two months. Because of this elapsed time, plaintiff asserts the trial court could infer that he has a permanent injury as a result of the accident. See Johnson v. City of Santa Fe, 35 N.M. 77,

290 P. 793 (1930); City of Phoenix v. Mullen, 65 Ariz. 83, 174 P.2d 422 (1946); Southern Ry. v. Lambert, 106 Ga.App. 691, 128 S.E.2d 87 (1962); American Marietta Co. v. Griffin, D.C.App., 203 A.2d 710 (1964); Carpenter v. Nelson, 257 Minn. 424, 101 N.W.2d 918 (1960).

Such an inference cannot be drawn unless there is evidence that plaintiff's disability, at the time of trial, resulted from the accident. Defendant is only liable for the injuries he inflicted. Martin v. Darwin, supra. Even if plaintiff's disability is permanent, there must be evidence that defendant caused that disability.

We review the evidence. After the surgery was performed, plaintiff made an uneventful recovery "* * * up to July 1 [1963]. * * *" At that time he was allowed to do light work but was restricted to 25 pounds of lifting. "* * * [H]is symptoms were still subsiding. Headaches had completely disappeared. * * *" Although the grafts could still be discerned, C2–3 and C6–7 were "healing well."

The doctor did not see plaintiff again until July 30, 1964; thirteen months later. At that time he was doing "custom farming" which was "heavy work." "* * * [E]xcept for riding over rough fields with heavy equipment [plaintiff] was getting along quite well and did experience some headache and neck pain, pain between the shoulders as a result of this jostling and jarring he was experiencing." At this time, the doctor felt that plaintiff "* * * was re-establishing his non-union at C6–7 level, which we attributed to the heavy work he was doing, and which as long as the symptoms remained subsided we felt there was sufficient scar tissue holding this thing solid that he had achieved the initial purpose of the graft, namely producing an asymptomatic condition to the neck."

In November 1964, the re-occurring non-union of C6–7 was more evident. The doctor felt "again" that the non-union resulted from plaintiff's activity as a farm laborer.

The doctor's last examination was April 8, 1965. Plaintiff had been driving a tanker over rough ground hauling waste water. In this activity, he experienced pain in the neck and between the shoulders, headaches and difficulty in sleeping. By not doing heavy lifting or experiencing severe jolting, however, plaintiff got along fairly well.

The doctor's testimony establishes that subsequent to surgery plaintiff was asymptomatic for a time; that pain returned with activities such as driving farm equipment or tankers. At the trial which began April 30, 1965, (the record does not disclose why the case was thereafter held under advisement in the district court for more than three years) the doctor testified as to plaintiff's inability to do heavy work, lifting or movements of the arms above the shoulders. He also testified that plaintiff's "greatest difficulty" arose in the cervical spine. In addition, the doctor testified:

"Q. Let me just ask you this: With reference to the heavy lifting today, is that mainly attributable to the C6–7 condition?

"A. Yes, sir, that is the main reason he is being limited to that.

"Q. Which you related to the activities on the farm down there.

"A. That is true."

The doctor's testimony does not establish that plaintiff's condition at trial (a limitation of physical activity) resulted from the accident.

The non-medical testimony shows that subsequent to the surgery and up to the "custom farming" period, plaintiff worked at various jobs; that the heavier the job the greater his difficulty because of pain. At times the pain caused him to "blackout."

Plaintiff agreed that the "custom farming" was strenuous work. After this terminated, plaintiff worked in a dental laboratory. There he experienced pain if he sat still any length of time. His worst (and last) "blackout" occurred while employed at the dental laboratory after lifting heavy objects. Plaintiff's own testimony places him in worse condition at time of trial than did his doctor. According to plaintiff, he suffers severe neck pain, headaches and sleeplessness on "* * * any type of lifting or physical exertion; * * *" Other witnesses tend to corroborate plaintiff's testimony.

Even if non-medical testimony may establish the cause of plaintiff's condition at trial (see Woods v. Brumlop, supra), the non-medical testimony in this case does not show that the condition at trial resulted from the accident. Rather, it shows increased pain and inability to work subsequent to the custom farming. It corroborates the medical opinion that the "main reason" for the limitation on plaintiff's activities at trial was the farm work. Compare Gammon v. Ebasco Corp., 74 N.M. 789, 399 P.2d 279 (1965).

c. While the evidence shows that plaintiff suffered injuries as a result of the accident, the evidence does not show that these injuries were permanent.

Prior to the farm work, there is evidence that plaintiff suffered injury as a result of the accident. This evidence has been referred to previously in the opinion. The limited medical evidence indicates an asymptomatic condition and that both cervical levels were "healing well." The non-medical evidence shows pain on doing heavier type of work. None of this evidence shows disability or damage extending into the future—that is, a permanent injury prior to the farm work. Compare Garcia v. Southern Pacific Co., supra.

The trial court erred in finding that plaintiff suffered permanent injury as a result of the accident.

*Medical bills.*

A portion of the doctor's bill and a portion of the bill for prescriptions was incurred as a result of the re-occurrence of non-union at C6–7. These portions resulted from plaintiff's farm activities and were not reasonably necessary as a result of the accident. Williams v. City of Gallup, 77 N.M. 286, 421 P.2d 804 (1966).

*Disposition of the case.*

Defendant does not attack the finding of negligence. Nor does he challenge the findings that plaintiff suffered pain and discomfort and an impaired earning ability as a result of the accident. Defendant did challenge the finding as to the amount of wages lost, but only on the basis that the extent of the aggravation had not been proved. We have held against defendant on that point.

The successful challenge is to an award of damages for permanent injury and to the portion of two medical bills not incurred as a result of the accident.

The judgment is reversed. The cause is remanded with instructions to make new findings as to plaintiff's damages, excluding the portion of the medical bills improperly admitted and excluding any damages for permanent injury and to enter a new judgment consistent with the findings. The new findings are to be made on the basis of the record, without taking additional evidence. Compare Mares v. City of Clovis, 79 N.M. 759, 449 P.2d 667 (Ct. App.1968). Defendant is to recover his costs.

It is so ordered.

MOISE and COMPTON, JJ., concur.