494 P.2d 1392

Elizabeth A. ELLIOTT, Plaintiff-Appellant,

v.

TAOS SKI VALLEY, INC., a Corporation, and American Employers' Insurance Company, a Corporation, Defendants-Appellees.

No. 755.

Court of Appeals of New Mexico.

March 3, 1972.

Certiorari Granted March 23, 1972.

Matias A. Zamora, Santa Fe, Russell Moore, Keleher & McLeod, Albuquerque, for plaintiff-appellant.

John A. Mitchell, Mitchell, Mitchell & Alley, Frank Andrews, Montgomery, Federici, Andrews, Hannahs & Morris, Santa Fe, for defendants-appellees.

## OPINION

SUTIN, Judge.

This is an appeal from a directed verdict granted defendants, arising out of a suit to recover damages for aggravation of a personal injury. Elizabeth A. Elliott, while skiing, fell and suffered a compression fracture of the bone of the left leg at the hip joint.

We reverse.

The trial court directed a verdict on the following grounds: (1) the defendants were not negligent as a matter of law; (2) Elliott was contributorily negligent as a matter of law; (3) there was lack of proof as to the extent of the aggravation of the injury.

The rules relating to a motion for a directed verdict are in Garcia v. Barber's Super Markets, Inc., 81 N.M. 92, 463 P.2d 516 (Ct.App.1969). Thus, in our view, we consider the evidence and inferences most favorable to Elliott.

*Taos Ski Valley's Negligence and Elliott's Contributory Negligence were Issues of Fact for the Jury.*

On and before February 12, 1967, Taos Ski Valley operated for profit, a ski

area in Taos County pursuant to a term Special Use Permit issued by the United States Forest Service. Under this permit, Taos Ski Valley agreed, (1) to provide and maintain a sufficient quantity of first aid supplies to care for all accidents that may occur; (2) provide and place toboggans fully equipped with blankets, splints, etc.; (3) provide a room in which to temporarily care for at least three injured persons; (4) provide for adequate and systematic patrol of the permitted area for the prevention of accidents and for rescue and first aid purposes; (5) the patrol shall meet the qualifications of the National Ski Association; all in accordance with a comprehensive safety plan jointly prepared by Taos Ski Valley and the District Ranger. Taos Ski Valley also agreed to provide a ski school.

On February 11, 1967, Elliott entered into a contract with Taos Ski Valley to take private lessons in the sport or art of skiing, and Taos Ski Valley provided Georgia Hotton as instructor. Miss Hotton was listed as a fully certified ski instructor with knowledge of the contents of the first aid manual. This manual included information about injuries to bones, joints and muscles, signs and symptoms thereof, and essentials of first aid.

On February 12, 1967, for aid and rescue, Taos Ski Valley had eight aluminum akais, sometimes called sleds or toboggans, equipped with sleeping bags, first aid equipment and splints. The akais were located at the top of the ski lift and at the first aid hut where the injured were to be taken. It also maintained a paid and fully equipped ski patrol, utilizing one or two way radios.

On that morning, Elliott, a widow, 49 years of age, accompanied by Hotton, fell on her left hip and injured herself. She told Hotton she injured her leg. Hotton helped her up and then Hotton, moving forward, hollered, "Come on, come on." So Elliott went down the best way she could to a little snow field. Hotton then started on down, and Elliott tried to follow her, but her leg could not carry any weight and she fell on her right side this time. Hotton came back and said, "You have a pulled muscle." Elliott believed her, but said she could not ski anymore, and said, "What shall I do?" Miss Hotton took Elliott's skis and left her with the poles, because the poles would be needed in walking to the lodge. She told Elliott to meet her at the lodge. Then hollered at Elliott, "I know it hurts a little, but it won't quit until you quit what you are doing". Elliott made her way back one half mile to a snow field, stopped and requested a toboggan. After one half hour, a toboggan arrived and she was taken to a warming hut. The instructor had been instructed to check and if the injury prevented a student from skiing any further, the instructor was to notify the ski patrol. If there was any doubt as to the injury, the instructor was to get a toboggan.

We believe this evidence is sufficient to create an issue of fact, (1) whether Taos Ski Valley was negligent in failing to exercise ordinary care toward Elliott after she fell and stated she could not ski anymore, and (2) whether Elliott was contributorily negligent in attempting to walk to the lodge.

*There was Sufficient Proof to Submit the Issue of Aggravation of the Injury to the Jury.*

 Elliott does not claim damages for the original injury, the fracture of the left femur. Her damage claim is for aggravation of this injury.

Dr. Earl McBride of Oklahoma City, a long recognized authority in orthopedic surgery, testified that Elliott did have additional damage to the bone, other than that of the initial injury which made her case worse; that if she had immediately been taken off her feet, the circulation might have had a chance to take care of itself; that the pressure and irritation, the twisting and abnormal forces placed on the hip as a result of walking down the mountain, and bearing weight after the bone was fractured, in his opinion, as a reason-

able medical probability, resulted in aggravation by fifty per cent of her total injury because it gave Elliott a permanent limp and may result in the loss of the head of that bone in the future.

This is sufficient evidence to create an issue of fact on aggravated injury and the extent thereof. Hebenstreit v. Atchison, Topeka & Santa Fe Ry. Co., 65 N.M. 301, 336 P.2d 1057 (1959); Morris v. Rogers, 80 N.M. 389, 456 P.2d 863 (1969); despite any claim of conflict in the doctor's testimony on cross-examination; Alvillar v. Hatfield, 82 N.M. 565, 484 P.2d 1275 (Ct. App.1971).

■ Taos Ski Valley also contends that the medical testimony is inherently improbable from a factual standpoint and it must be disregarded under the "physical facts and conditions" doctrine of Ortega v. Koury, 55 N.M. 142, 227 P.2d 941 (1951). We see no basis for the application of this rule to the facts of the instant case. We believe that the doctor's testimony and opinion has a factual basis sufficient to create an issue of fact for the jury.

### Assumption of Risk as a Defense on Retrial.

■ Taos Ski Valley raised the defense of assumption of risk. We cannot determine whether the directed verdict included this defense. However, since this case must be tried over, the defense is controlled by Williamson v. Smith, 83 N.M. 336, 491 P.2d 1147 (1971).

The judgment is reversed and Elliott is granted a new trial.

It is so ordered.

WOOD, C. J., concurs.

COWAN, J., dissents.

COWAN, Judge (dissenting).

I cannot agree with the majority that Dr. McBride's testimony was sufficient "to create an issue of fact on aggravated injury and the extent thereof."

It is not correct, as stated in the majority opinion, that the doctor testified to an aggravation of fifty percent of plaintiff's total injury. The plaintiff fractured the neck of her left femur and later developed aseptic necrosis, a "lack of circulation in the tissues", near the fracture site. It was for aggravation of this condition alone that defendants were alleged to be liable and it was to the aggravation of this condition alone that the doctor testified.

The question posed was "Do you have an opinion, Doctor, from your examination of the X-rays, the medical history taken and your examination of Mrs. Elliott, as to the percentage of *aseptic necrosis* which can be or could be attributed to her activity such as walking after the initial injury?" [Emphasis added] He answered " * * * [I]t would be my opinion that in this case it would be about fifty-fifty." Later in the answer he said " * *. * so I think that about fifty per cent [of the aseptic necrosis] was due to the fact that *it was fractured there* and another fifty per cent was probably the aggravation." [Emphasis added] The case concerns itself, then, only with the cause of fifty percent of the aseptic necrosis, the other fifty percent having been a direct result of the fracture.

It appears that the majority stopped their consideration of Dr. McBride's testimony at this point. Unfortunately for the majority's position, the doctor did not stop testifying at this point. With an amazing lack of constancy but with considerable candor, the doctor elaborated upon the causes of the aggravation.

The opinion question was restricted to "activity such as walking", the plaintiff's walk from the site of her fall to the warming hut below being the alleged cause of the claimed aggravation. Before starting her walk, she shook her leg "real hard" and "kind of stomped" so that "I could go on down the hill." It is noted that the plaintiff did not know of the fracture, it being one ordinarily revealed only by x-ray.

The weakness of the doctor's belief in his initial opinion was first evidenced when he replied to a question as to reason-

able medical probability with "Well, I think so." He then testified to aggravative factors in addition to the walking: the twisting motion at the time of her first fall; the impaction of bone into socket at the time of the initial fall; the sitting on the bench at the warming hut; other weight bearing; her bus trip to the Taos hospital; the fitting of the cast in Taos; and the pin inserted in the bone in Oklahoma.

When asked to define the relative contribution of these various factors to the aggravation he used, either by express words of his own or by response to their use in questions, phrases such as: impossible to separate; hard to distinguish; you can't do it; you can't tell; they are not separable; I wouldn't know; there is no way to tell; it's arbitrary; purely a matter of speculation. Even when he once predicated his opinion to some extent on his experience, he added "But I speculate on that."

The rules of law governing this case are:

"The extent of the aggravation can be established by testimony that the pre-existing condition has been aggravated by a stated percentage amount. * * *" Morris v. Rogers, 80 N.M. 389, 456 P.2d 863 (1969).

"The defendant * * * is liable only for the aggravation * * * and the burden of proving with reasonable certainty the extent of the aggravation was on the plaintiff." Hebenstreit v. Atchison, Topeka & Santa Fe Ry. Co., 65 N.M. 301, 336 P.2d 1057 (1959).

"Difficulty in proving extent of aggravation * * * does not justify non-application of the rule that plaintiff must prove the injury that defendant inflicted. * * * The extent of aggravation of a pre-existing * * * condition must be proved by the plaintiff. * * *" Martin v. Darwin, 77 N.M. 200, 420 P.2d 782 (1966).

The burden of proving with reasonable certainty the causal connection is on the plaintiff. Woods v. Brumlop, 71 N.M. 221, 377 P.2d 520 (1962).

The cause of a plaintiff's condition, at the time of trial, must be established by medical testimony. Alvillar v. Hatfield, 82 N.M. 565, 484 P.2d 1275 (Ct.App. 1971).

"* * * The rule is unquestioned that the evidence must show damages to a reasonable certainty." Bokum v. Elkins, 67 N.M. 324, 355 P.2d 137 (1960).

"While it may be true that, generally speaking, if a witness' testimony on direct examination conflicts with that given by him on cross-examination, it is for the jury to decide when, if at all, he has testified truthfully, Armishaw v. Kan., 123 Or. 69, 260 P. 1011; 58 Am.Jur. 492, Witnesses § 863; yet that rule can have no application *if the witness so explains his prior testimony as to leave the facts to which he testifies a mere matter of conjecture, possibility or guess. * * *"* Washburn v. Simmons, 213 Or. 418, [323 P.2d 946], 325 P.2d 255 (1958). [Emphasis added]

"Hence it is that where the plaintiff's case rests upon the testimony of a witness whose further examination *so explains or qualifies his prior testimony as to leave the fact to which he testifies a matter of conjecture, possibility, or guess, his testimony will be construed as a whole to be so lacking in probative force as not to make a case for the jury. In such circumstances, the defendant, as a matter of law, is entitled to the direction of a verdict.*" Annot., 66 A.L.R. 1518 (1930). [Emphasis added]

A fair appraisal of Dr. McBride's entire testimony, upon which the plaintiff's proof of damage rests, convinces me beyond doubt that his evidence is insufficient, as a matter of law, to make a case for the jury.

In directing a verdict for the defendants, the court said: "There is too much vagueness, and I think to submit it to the jury would be submitting it on the pure basis of speculation and conjecture. To me there is a lack of proof to the extent of aggravation of the injury." I agree.

This case goes beyond mere "contradictions in testimony" to be resolved by the

fact finder. The doctor's testimony, after his initial opinion testimony, so undermined the latter that it became not just contradictory evidence, but, probatively, no evidence at all.

Under such circumstances, the defendants, as a matter of law, were entitled to a directed verdict and the judgment of the trial court should be affirmed. The majority feel otherwise and I, therefore, dissent.